UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF COLUMBIA

June 1, 2021

| | |
|---|---|
| **SAMANTHA CARTER**<br>**Plaintiff,**<br><br>v.<br><br>POHANKA OF SALISBURY, INC.<br>**Defendant.** | §<br>§<br>§<br>§ CIVIL ACTION NO.<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

JUN 04 2021

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

1:21-CV-2306

## PLAINTIFF'S ORIGINAL COMPLAINT
## NATURE OF THE ACTION

Comes Now Plaintiff Samantha Carter, Pro Per, hereby files this petition pursuant to the Consumer Financial Protection Act of 2010 ("CFPA"), the Dodd-Frank Wall Street Reform, *an act created to prevent abuse of consumers* 12 U.S.C. § 5565, Negligence, Intentional Infliction of Emotional Distress, Negligence Per Se, Res Ipsa Loquitur, Breach of Duty; 42 U.S.C. § 1985 (3) Animus based discrimination (gender) and racial discrimination; And seeking entitled relief under 42 U.S.C. § 14505 Non economic damages, 22 U.S.C. § 2202 Declaratory Relief and 16 U.S.C. § 6604 Punitive damages.

## I.

## JURISDICTION AND VENUE

1. This court is vested with jurisdiction over defendants because the defendants conduct business in various markets in the United States.

2. Pursuant to Title U.S.C. 1332(3)(a) Diversity of Citizenship, venue is proper because the defendants are of different states and the matter in controversy exceeds the sum of value of $75,000.00.

3. Pursuant to Title 28 U.S.C. 1331 Federal question, venue is proper and district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws and treaties of the United States.

June 1, 2021

## II.

## THE DEFENDANT

4. Pohanka, is a Maryland Corporation organized under the laws of the State of Maryland and registered to do business in Maryland conducting business throughout Maryland. The registered agent to be served is Neal Johnson 1772 Richie Station Court, Capital Heights, MD 20743 and can conduct service on behalf of the Defendants.

## III.

## FINDINGS OF FACT

1. This claim arises out of the unreasonable act of the Defendants hiding the keys to a brand new 2020 Toyota Avalon after the Plaintiff paid $32, 995.00 cash for it, to the dealership on June 12, 2021. Plaintiff went to the dealership after hearing a radio advertisement for Toyota Pohanka in Salisbury, MD; Plaintiff Carter decided to try to purchase a new vehicle again, considering the manufacturer of her previous purchase refused to honor their warranty on a lemon she purchased from a Porsche Cars North America dealership. They refused to surrender her trade-in back to her, after they claimed to have reversed the deal with the lemon; The actions has left Plaintiff without a vehicle for over a year see Carter vs. Porsche Cars North America (2019).

2. Plaintiff shared this briefly with the Defendants which in receiving declared Plaintiff a complete liar. The defendants did not want to believe anything about the Plaintiff and had a perception that people that are considered on the surface to be a black person do not walk into auto dealerships and pay cash for vehicles.

3. As a result, the Defendants attempted during the paperwork process to make Plaintiff sign a fraudulent registration by applying a corporation registration number to the temporary registration that they wanted Plaintiff to claim as her own. The Plaintiff refused and the dealer informed her that it was Maryland state law for every temporary registration to have a corporation number attached to it.

4. Plaintiff Carter informed the defendants that she found it difficult to believe that any state law would find a fraudulent registration number legal and she could not sign the temporary registration for information that was not hers or the family holdings company she was considering registering the vehicle in.

June 1, 2021

10. The defendants informed her that if she did not sign the registration as they established it that the Plaintiff could not have the vehicle. The Plaintiff informed the defendants that that was no problem but she cannot put her name on anything false.

11. The defendants had actually called a local police officer to come to the dealership after they decided

to correct the temporary registration and then the Plaintiff signed the proper registration.

12. The Plaintiff departed the office to await the vehicle that was being prepped for delivery, quickly greeted surprisingly by a police officer on her way out of the door to grab a new key chain from the temporary vehicle she had been driving. The officer appeared to want to have a conversation with the Plaintiff but instead headed straight to the managers station.

13. It was very evident what was occurring and the Plaintiff began to distress over being profiled and a possible confrontation with law enforcement for no reason other than paying cash for a vehicle. Considering the amount of discrimination Plaintiff has experienced with Salt Lake City Porsche, F.C. Kerbeck Bentley see Carter vs. Bentley; It almost appears that the Plaintiff is subjected to a national libel and slander throughout vehicle dealerships in America.

14. In Carter vs. Bentley, the FC Kerbeck dealership decided to keep the Plaintiff's one hundred thousand dollar deposit towards a brand new Bentley and refused to completed her order or provided her with a receipt. They declared the same perception the Pohanka management declared, "Blacks do not pay cash for vehicles unless they are criminals." As a result the F.C. Kerbeck dealer decided to just keep Plaintiff's deposit and disregard her until she took legal action.

15. The Plaintiff also shared this with Pohanka whom ensured Plaintiff that she was at a woman-owned dealership and would not be treated adversely. It was a lie.

16. Pohanka informed Plaintiff that they could not register a vehicle out of state and that would be Plaintiff's responsibility.

17. As the Plaintiff awaited the vehicle. The sales person arrived upfront with the vehicle from detail and took the key inside. He claimed to have laid the keys on his desk. When he went to retrieve them and give them to Plaintiff, the keys were gone. Suddenly a rush of sales people were inside of the vehicle that Plaintiff had paid-in-full without her permission and without knowing if they sanitized there hands.

18. Many of them began to give the Plaintiff an evil and hateful stare and it was in an assumption that Plaintiff had taken the keys to the vehicle that she paid cash for and pretended to not know what was going on. A silly assumption. After about thirty minutes went by the Plaintiff realized this was not divine and decided to return to the hotel. This was on June 12, 2021.

19. It was not until on or around June 16, 2021 when Plaintiff decided to follow up with the dealership to see if they have ever found the keys. FOUR DAYS WENT BUY. Plaintiff was informed the keys were found that morning and were in the office of the manager. Plaintiff had already left the area understanding that something was wrong. The Plaintiff decided to continue her nomading.

20. The dealership did not bother to call the Plaintiff for four days and claimed to have lost keys to the vehicle for that amount of time. When in fact, they hide the keys, while supposedly having Plaintiff investigated for the amount of time trying to have her arrested and build a case against her which this is only an assumption until discovery is complete but considering that the police were called the dealership after the Plaintiff paid for the vehicle in full, is only evident.

21. The plaintiff received a voice message 3 weeks later stating the the dealership now wanted to register the vehicle and needed the registration information. A COMPLETE SHOCK. This would imply that the dealership completely discarded all of the information completed by the paying consumer but decided to keep the Plaintiff's $32, 995.00. The voicemail stated the dealer needed to know what name to put the vehicle in and etc. However no vehicle registration forms were completed at the dealer, only a temporary registration.

22. The dealers decided to forge the Plaintiff's signature on documents.

23. The Plaintiff in complete dismay informed the dealer that she now understands completely what is occurring.

24. The Plaintiff sent a letter to the dealership on or around July 1, 2020 and requested them to return her money, especially since they felt so uncomfortable accepting money from a person of color to pay for a vehicle in full with no financing.

25. The Plaintiff informed the dealership since they felt that uncomfortable with her to go through such extreme measures that she did not want to do any business with them, at all and it was best to just refund.

26. The dealership pretended to apologize and comply through an email response sent to Plaintiff on July 6, 2020. Plaintiff was asked was there anything they can do to keep her business. Plaintiff responded, no.

June 1, 2021

27. Weeks went by when Plaintiff realized the dealership did not want to return her money and Plaintiff inquired about the vehicle by email and reminded the dealership on July 24, 2020 that she still wants her money back.

28. On August 19, 2020, the Plaintiff inquired about her refund.

29. On September 22, 2020, the Plaintiff inquired about her refund and informed the dealer that she did not want to file a lawsuit but will if she does not receive her money back.

30. On October 7, 2020, the Plaintiff received a bit of a mockery email as if she had never requested her refund in which the Plaintiff asked the dealer to cease and desist until they received a summons for court.

31. November 2020, December 2020, January 2021, February 2021, March 2021, April 2021 and now in May 2021 has gone by; The Plaintiff has not received her refund of $32, 995.00, to-date. Neither a proper response.

## IV.

## **LEGAL STANDARDS OF TORTS**

32. All of the defendants actions revolve around Negligence, Intentional Infliction of Emotional Distress, Negligence Per Se, Res Ipsa Loquitur, Breach of Duty.

33. The Defendants cannot provide any form of defense by claiming that they are entitled to retain Plaintiff's funds.

34. The place of the tort of negligence in this case of consumer protection concludes that a negligence case has four elements: duty, breach, causation and harm. The defendants had a duty to simply give plaintiff the keys to the vehicle she paid for in full; the defendants breached that duty by hiding the keys; But-for the existence of profiling and discrimination would the Plaintiff have simply driven the Toyota away that she paid for in full. Without the defendants actually hiding the keys to the vehicle, calling the police, attempting to have plaintiff sign fraudulent registration documents this case would not exist.

Defendants actually caused this petition, which consumes Plaintiff's, time, mental energy and finances. The harm done to Plaintiff is irreversible at this point as Plaintiff has missed opportunities to invest or purchase what was needed with the additional amount of funds. Passing Plaintiff's name down to legal authorities was very unnecessary. Res Ispa Loquitur.

35. Negligence Per Se, the defendants violated the Consumer Financial Protection Act including not providing the Plaintiff with a refund considering that she sent more than the bill of sale. Defendants practices were purely abusive. The defendants breached their duty as a dealership in it's entirety.

36. The defendants do not expect, nor did they respect, the seriousness of Plaintiff's notice of intent to file a lawsuit because they do not consider it a breach of duty to refund someone money in their mind they have concluded is a criminal because the consumer paid cash for a vehicle.

37. Defendants acts are outrageous and they could care less about the stress they caused Plaintiff. The defendants acted as a bully to disregarded Plaintiff after pretending they were concerned about her letter to resolve in peace.

38. Plaintiff had to muster the appropriate amount of energy to file another lawsuit pro per while waiting patiently almost one year for a refund.

39. Plaintiff may not have been treated the same way if she were a man. Plaintiff was actually too nice to the defendants as a consumer even when they attempted to have her sign faulty paperwork and hide the keys to the vehicle.

June, 1, 2021

# V.
# CLAIMS FOR RELIEF

## COUNT 1
## CONSUMER FINANCIAL PROTECTION ACT OF 2010, DODD-FRANK WALL STREET REFORM 12 U.S.C. § 5565

40. Plaintiff reallages and incorporates by reference paragraphs 1-39. As alleged above, Pohanka hide the key to the vehicle that Plaintiff paid-in-full for. By engaging in the conduct described above Pohanka engaged in practices that are wanton and illegal as a matter of law and morals. Defendants operated in fraud and deceit upon the purchaser.

## COUNT 2
## NEGLIGENCE

41. Plaintiff reallages and incorporates by reference paragraphs 1-39. Pohanka knew, or was reckless in their scheme to engage in such practices or course of business that operated as a fraud upon the Plaintiff as described in the details above.

## COUNT 3
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

42. Plaintiff reallages and incorporates by reference paragraphs 1-39. As alleged above, Pohanka disregarded Plaintiff after pretending to resolve the matter by asking Plaintiff, "Is there anything they can do to keep her business?" Plaintiff awaited the refund and never received it. By engaging in the conduct described above the defendants have accumulated stress onto the Plaintiff month after month of the Plaintiff not knowing what to do other to file a lawsuit; However giving the defendants time, to simple rectify and just simply refund her. The defendants continued to violate the consumer protection acts established by law to ensure that people are not taken advantage of.

June 1, 2021

## COUNT 4
## NEGLIGENCE PER SE

43.     Plaintiff reallages and incorporates by reference paragraphs 1-39. As alleged above , the defendants knew their conduct was outrageous and insensible. The Plaintiff just wanted to purchase a vehicle cash. The defendants want to criminalize the Plaintiff's cash purchase see Carter vs. Porsche Cars North America; A case in which the Plaintiff after returning a lemon and requesting her perfect trade-in back was declared a criminal outlaid by a dealership manager for titling her trade in her family LLC and paying cash for her trade. The dealership called the Plaintiff a criminal after she asked for her trade back so she could leave. The managers started an argument with the Plaintiff that resulted in her leaving the dealership in a taxi and the dealership retaining the Plaintiff's vehicle that she paid cash for 11 months earlier. The dealership later auctioned off the Plaintiff vehicle that she paid cash for. This pattern seems national with Plaintiff Carter. By engaging in the conduct Pohanka violated 12 U.S.C. § 5565.

## COUNT 5
## RES IPSA LOQUITUR

44.     Plaintiff reallages and incorporates by reference paragraphs 1-39. As alleged above, the defendants know that they operated in deceit first by attempting to have plaintiff to sign false information on a temporary registration and then calling a local policeman to come and visit there dealership while plaintiff was purchasing a vehicle. By engaging in this conduct the defendants were simply entertaining themselves. This kind of entertainment could simply result in injury or death from false accusation or false arrest.

June 1, 2021

## COUNT 6
## BREACH OF DUTY

45.     Plaintiff reallages and incorporates by reference paragraphs 1-39. As alleged above, the defendants had a duty to supply Plaintiff with the key to the vehicle that she paid for and to complete accurate paperwork without attempting to have plaintiff sign false documentation. By engaging in this conduct the defendants are establishing their business as a criminal practice or laundering facility.

## COUNT 7
## ANIMUS BASED DISCRIMINATION
## (GENDER AND RACE) 42 U.S.C. § 1985 (3)

46.     Plaintiff reallages and incorporates by reference paragraphs 1-39. As alleged above, the defendants simply refused to take Plaintiff seriously as a woman and as a woman of color. The defendants just simply decided to keep Plaintiff's money. See Carter vs. Bentley, the dealership decided to keep Plaintiff's one hundred thousand dollar deposit and not order her a vehicle or give her a receipt in assumption that they were keeping the money of criminal due to Plaintiff being a solo wealthy individual in America as a person of color. The defendants will continue to discriminate against woman in every facet *see* Roesinger vs. Pohanka of Salisbury (2020).

June 1, 2021

# **PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiff Carter respectfully request that the Court:

I.

Issue findings of fact and conclusions of the law that Defendants committed alleged violations.

II.

Issue a judgment, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure permanently enjoining Pohanka and its agents or officers from violating the Consumer Financial Protection, Dodd-Frank Wall Street Reform Act.

III.

Order Defendant to disgorge all funds owed to Plaintiff Carter from their wanton business practices and illegal conduct together with prejudgment interest thereon.

IV.

Order Defendant to pay a civil penalty under 12 U.S.C. § 5565 of the Consumer Protection Act.

V.

Enter a total order against defendants in the amount of $320,000.00, Pursuant to 42 U.S.C. § 14505 for Non economic damages, 22 U.S.C. § 2202 Declaratory Relief, 16 U.S.C. § 6604 Punitive Damages and grant such other and further relief as this court may determine to be just and necessary.

## **CERTIFICATE OF COMPLIANCE**

Pursuant to the Local Rules of the United States District Court for the District of Columbia, the above signed counsel certifies that the foregoing document complies with all formatting requirements of Local Rule 5.1 and further certifies that this document was prepared in 14-point Times New Roman font.

## **CERTIFICATION AND CLOSING**

Under Federal Rules of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Respectfully Submitted,

Samantha Carter, Pro Per

1001 S. Main St.

Suite 5524

Kalispell, MT 59901

caseink@protonmail.com