## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Samantha Carter,

    Plaintiff,

v.          Case No. 1:21-cv-2306-MLB

Pohanka of Salisbury, Inc.,

    Defendant.

_____/

## OPINION & ORDER

On June 4, 2021, Plaintiff Samantha Carter filed suit against Defendant Pohanka of Salisbury, Inc. (Dkt. 1.) On July 27, 2021, Plaintiff moved for default judgment. (Dkt. 6.) The Court denies that motion.

# I.     Background

On June 12, 2021,[1] Plaintiff paid $32,995 for a 2020 Toyota Avalon at Toyota Pohanka in Salisbury, Maryland.  (Dkt. 1 ¶ 1.)[2]  During the paperwork process, Plaintiff alleges Defendant tried to make her sign a fraudulent registration by applying a corporation registration number to the temporary registration.  (*Id*. ¶ 3.)[3]  Plaintiff refused, and the dealer informed her that it was Maryland state law for every temporary registration to have a corporation number attached to it.  (*Id*.)  Defendant informed Plaintiff that if she did not sign the registration, Plaintiff could not have the vehicle.  (*Id*. ¶ 10.)  Plaintiff responded stating that was not a problem, but she could not put her name on anything false.  (*Id*.)

She alleges that, after Defendant decided to correct the temporary registration and Plaintiff signed the proper registration, Defendant called a local police officer to come to the dealership.  (*Id*. ¶ 11.)  Plaintiff

---

[1] Plaintiff sometimes alleges the incidents giving rise to this case occurred in 2021 and sometimes alleges the incidents occurred in 2020. (*See* Dkt. 1 ¶¶ 1, 18, 19, 24, 26–31.)  The Court believes the evets occurred in 2020, but the exact year is irrelevant for purposes of this Order.

[2] Plaintiff has two paragraphs titled "1."  The Court cites to the second paragraph "1."

[3] Plaintiff has two paragraphs titled "3."  The Court cites to the second paragraph "3."

departed the office to await the vehicle and was quickly greeted by a police officer. (*Id.* ¶ 12.) After the vehicle arrived up front, the salesperson said the keys were gone. (*Id.* ¶ 17.) She says "a rush of sales people" went inside the vehicle without Plaintiff's permission. (*Id.*) After about thirty minutes, Plaintiff decided to return to the hotel. (*Id.* ¶ 18.)

On June 16, 2021, Plaintiff decided to follow up with the dealership. (*Id.* ¶ 19.) Plaintiff was informed the keys were found that morning and were in the manager's office. (*Id.*) But Plaintiff had already left the area to continue "nomading." (*Id.*)

Three weeks later, Plaintiff received a voicemail stating the dealership wanted to register the vehicle and needed registration information. (*Id.* ¶ 21.) She says the dealers forged Plaintiff's signature on documents. (*Id.* ¶ 22.) On July 1, 2020, Plaintiff sent a letter to the dealership requesting it return her money. (*Id.* ¶ 24.) On July 6, 2020, the dealership "pretended" to apologize and asked if there was anything it could do to keep her business. (*Id.* ¶ 26.) Plaintiff responded there was not. (*Id.*) On July 24, 2020, Plaintiff asked about the vehicle by email, reminding the dealership she still wanted a refund. (*Id.* ¶ 27.) On August 19 and September 22, 2020, Plaintiff again inquired about her

3

refund. (*Id.* ¶¶ 28–29.) As of June 4, 2021, Plaintiff still had not received her refund. (*Id.* ¶ 31.)

On June 4, 2021, Plaintiff filed a lawsuit alleging seven counts: (1) violation of the Consumer Financial Protection Act of 2010; (2) negligence; (3) intentional infliction of emotional distress; (4) negligence per se; (5) res ipsa loquitur; (6) breach of duty; and (7) animus based discrimination. (*Id.* ¶¶ 40–46.) On July 2 and 6, 2021, Plaintiff filed the same return of service. (Dkts. 4; 5.) On July 27, 2021, Plaintiff filed a motion for entry of default judgment. (Dkt. 6.) On August 3, 2021, Plaintiff moved for clerk's entry of default. (Dkt. 9.) Default was then entered on August 4, 2021.

## II.   Legal Standard

"Under Rule 55 of the Federal Rules of Civil Procedure, there is a two-step procedure for obtaining a default judgment." *Bonny v. Benchmark Brands, Inc.*, No. 1:16-cv-3150, 2017 WL 1216926, at *1 (N.D. Ga. Mar. 10, 2017) (internal quotation marks omitted). First, "the party seeking a default judgment must file a motion for entry of default with the clerk of a district court by demonstrating that the opposing party has failed to answer or otherwise respond to the complaint." *Am. Auto. Ass'n,*

*Inc. v. AAA Auto Sales, LLC*, No. 1:16-CV-01159, 2016 WL 10957245, at
*1 (N.D. Ga. Oct. 20, 2016).  Second, "once the clerk has entered a default,
the moving party may then seek entry of a default judgment against the
defaulting party." *Id.*  Generally, these "steps may not be combined into
one," *id.* — "the clerk's entry of default must precede an application for
default judgment," *Bonny*, 2017 WL 1216926, at *1 (internal quotation
marks omitted).  *See Am. Deli Int'l, Inc. v. Jay & Young Grp., LLC*, No.
1:13-CV-02302, 2014 WL 12098959, at *5–6 (N.D. Ga. Apr. 24, 2014)
(collecting cases).

   After the clerk enters default, "[t]he entry of a default judgment is
committed to the discretion of the district court." *Hamm v. DeKalb Cty.*,
774 F.2d 1567, 1576 (11th Cir. 1985).  Default judgments are "generally
disfavored" because this Circuit has a "strong policy of determining cases
on their merits." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239,
1244–45 (11th Cir. 2015).  But "to enter a valid default judgment, a court
must have subject-matter jurisdiction over the claims and have personal
jurisdiction over the defendant. *Osborn v. Whites & Associates Inc.*, No.
1:20-cv-02528, 2021 WL 3493164, at *2 (N.D. Ga. May 20, 2021) (citing
*Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1215 & n.13 (11th

Cir. 2009)).  Thus, "[w]hen entry of default is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties."  *Gilmore v. Acct. Mgmt., Inc.*, No. 1:08-CV-1388, 2009 WL 2848278, at *2 (N.D. Ga. Apr. 27, 2009), *adopted in relevant part at* 2009 WL 2848249 (N.D. Ga. Aug. 31, 2009).

> Courts may raise the question of personal jurisdiction *sua sponte* when deciding whether to enter a default judgment when the defendant has failed to appear, provided the Court grants the parties the chance to argue why personal jurisdiction exists.  *Lipofsky v. N.Y. State Workers Comp. Bd.*, 861 F.2d 1257, 1258 (11th Cir. 1988) ("In the absence of a waiver, a district court may raise on its own motion an issue of defective venue or lack of personal jurisdiction; but the court may not dismiss without first giving the parties an opportunity to present their views on the issue."); *see also Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001) (no error by district court to raise lack of personal jurisdiction *sua sponte* upon plaintiff's motion for default judgment); *Smarter Every Day, LLC v. Nunez*, No. 2:15-CV-01358-RDP, 2017 WL 1247500, at *2 (N.D. Ala. Apr. 5, 2017) (raising lack of personal jurisdiction *sua sponte* upon plaintiff's motion for default judgment); *Turi v. Stacey*, No. 5:13-CV-248-OC-22PRL, 2015 WL 403228, at *3 (M.D. Fla. Jan. 28, 2015), *aff'd*, 627 Fed.Appx. 904 (11th Cir. 2015) (same). Because a "defendant may defeat subsequent enforcement of a default judgment in another forum by demonstrating that the judgment issued from a court lacking personal jurisdiction," *Rash v. Rash*, 173 F.3d 1376, 1381 (11th Cir. 1999), raising the issue of personal jurisdiction at the default-judgment stage ultimately conserves judicial resources.

*Hand v. Wholesale Auto Shop, LLC*, No. 7:15-cv-01838, 2018 WL 305818, at *2 (N.D. Ala. Jan. 5, 2018).

Personal jurisdiction over a nonresident defendant exists only when both parts of a two-part analysis are satisfied. *Abramson v. Walt Disney World Co.*, 132 F. App'x 273, 275 (11th Cir. 2005). First, the forum state's long arm statute must provide a basis for jurisdiction. *Id.* State law governs whether the state's long arm statute reaches the controversy in question.[4] *Id.* Second, there must be sufficient minimum contacts to satisfy due process constitutional concerns. *Id.* A finding of personal jurisdiction must also comport with traditional notions of fair play and substantial justice including: (1) the burden on the defendant in defending the lawsuit; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the

---

[4] Under O.C.G.A. § 9-10-91, a Georgia court may exercise personal jurisdiction over a non-resident defendant who (1) transacts any business within the state or (2) commits a tortious act or omission within the state. O.C.G.A. § 9-10-91.

states in furthering fundamental substantive social policies.  *Madara v. Hall*, 916 F.2d 1510, 1517 (11th Cir. 1990).

## III.  Discussion

The motion for default judgment does not contain any argument about personal jurisdiction (Dkt. 6), and in the complaint Plaintiff only summarily alleges "[t]his court is vested with jurisdiction over defendants because the defendants conduct business in various markets in the United States" (Dkt. 1 ¶ 1).[5]  This pleading is insufficient to show the Court has personal jurisdiction over Defendant.  Plaintiff states no facts showing that Defendant does any business in Georgia.  In fact, Plaintiff has not even alleged in her own case that Defendant was a Georgia company, that she was in Georgia at any time she spoke with a representative of Defendant or received an email from Defendant, that Defendant drew funds on a Georgia bank, or that Defendant sent any mail to her in Georgia.  (*See generally* Dkt. 1.)  The Court does not suggest any one or all of these allegations would be sufficient.  The Court merely notes that she alleges no nexus or link to Georgia.  Plaintiff alleged Defendant "is a Maryland Corporation organized under the laws of the

---

[5] The Court cites to the first paragraph "1."

State of Maryland and registered to do business in Maryland conducting business throughout Maryland." (*Id.* ¶ 4.)[6]  Plaintiff also alleged Defendant's "registered agent to be served is Neal Johnson 1772 Richie Station Court, Capital Heights, MD 20743." (*Id.*)

Accordingly, the undersigned does not find sufficient facts to show that the accused activity giving rise to this lawsuit took place in Georgia, that Defendant does business within the state, or that Defendant has minimum contacts with the forum such that it should reasonably anticipate being haled into court here and that an exercise of jurisdiction in this forum will not offend traditional notions of fair play and substantial justice.  The filings before the Court are insufficient to supply a basis for determining that the Court may exercise personal jurisdiction over Defendant.  Plaintiff has thus failed to establish that she is entitled to default judgment against Defendant and the Court denies her motion. Plaintiff, however, is granted leave to file an amended motion for default judgment within twenty-one days of the entry of this Order.  Plaintiff must address the proper standard for determining whether personal

---

[6] Plaintiff has two paragraphs titled "4."  The Court cites to the first paragraph "4."

jurisdiction exists over a foreign defendant and how this standard applies to the facts of this case.  Plaintiff is warned that failure to timely fila an amended motion for default judgment shall result in dismissal of the action for want of personal jurisdiction.

## IV.  Conclusion

The Court **DENIES** Plaintiff's Motion for Default Judgment. (Dkt. 6.)  The Court **GRANTS** Plaintiff twenty-one days to file an amended motion for default judgment consistent with this Order.

**SO ORDERED** this 1st day of November, 2021.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE